**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                           )
**EUGENE WEINER,**                         )
                       **Plaintiff,**      )          **CIVIL ACTION**
                                           )          **NO.  4:17-40144-TSH**
**RUSHMORE LOAN MANAGEMENT**               )
**SERVICES, LLC & MTGLQ INVESTORS,**       )
**LP,**                                    )
                       **Defendants.**     )
_____  )

## ORDER AND MEMORANDUM ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket Nos. 37 & 42)

**December 5, 2019**

**HILLMAN, D.J.**

Eugene Weiner ("Plaintiff") brings this action against MTGLQ Investors, L.P. ("MTGLQ") and Rushmore Loan Management Services, LLC ("Rushmore") (collectively, "Defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, and the Massachusetts Consumer Protection Act ("MCPA"), M.G.L. c. 93A, § 2. Plaintiff moves for summary judgment on liability. (Docket Nos. 37). Defendants cross-move for summary judgment on liability and damages. (Docket No. 42). For the following reasons, the Court **_denies_** both motions.

## Background

In 2003, Plaintiff financed his purchase of property in Fitchburg, Massachusetts (the "Property"), by borrowing $124,000.00 from Countrywide Home Loans, Inc. (Docket Nos. 40-1, 40-2, 40-3, 45 at 12–25). Plaintiff initially paid $684.73 a month on his mortgage, but he modified the terms of the loan in 2010 and 2014 to reduce his monthly payments. (Docket No.

45 at 27–37). Plaintiff does not recall making any payments after January 1, 2015 and does not

contest that he defaulted on the loan. (Docket No. 46 at 8).

The mortgage was assigned to MTGLQ on August 18, 2016. (Docket No. 41-5).

MTGLQ hired Rushmore to service the loan, and on August 30, 2016, Rushmore sent Plaintiff a

mortgage statement showing an outstanding balance of $16,072.18. (Docket No. 45 at 39–43).

A few months later, MTGLQ commenced a Servicemembers Civil Relief Act ("SCRA") action

in the Massachusetts Land Court to foreclose on Plaintiff's property. (Docket No. 45 at 45).

Chief Justice Cutler issued an SCRA judgment on June 20, 2017. (Docket No. 45 at 45).

On June 27, 2017, Rushmore mailed Plaintiff a letter offering him a potential loan

modification plan (the "June Letter"). (Docket Nos. 40-7, 45 at 52–76). In relevant part, the

June Letter states:

> Congratulations! We are excited to make you an offer for a modification program that is
> designed to make your mortgage payments more affordable and help you keep your
> home.
>
> TO ACCEPT THIS OFFER
>
> Provide documentation of your monthly income and expense information. If your
> mortgage payment to monthly income ratio is less than 35% and your total monthly
> expenses (including your mortgage payment) to monthly income ratio is less than 55%;
> you will be provided with modification terms, a three month trial plan with a new
> principal balance of $125,000 and an estimated payment of $857.60. If you make all
> three payments successfully, we will permanently modify your loan!
>
> TIME IS OF THE ESSENCE
>
> This modification program is based upon a valuation dated 05/16/2017. . . In the event we
> have not heard from you within 60 days from the date of this offer, you still may be
> eligible for this program; however a new valuation will be required. The estimate amount
> of debt forgiveness may change. All other terms of this offer would remain applicable.
>
> . . .
>
> **WHAT IF MY PROPERTY IS SCHEDULED FOR A FORECLOSURE SALE?**

- In general, we will not evaluate a Borrower Assistance Application that is submitted shortly before a scheduled foreclosure sale date. This means that, in general, in order for your Application to be evaluated, your <u>complete</u> Borrower Assistance Application must be received by Rushmore: . . .
    - **For all other loans: at least 38 calendar days prior to the scheduled foreclosure sale date**
- **If a foreclosure sale is pending but there is no specific date scheduled for the sale, a court with jurisdiction over the foreclosure or a public official charged with carrying out the sale may not halt the sale even if we approve you for a foreclosure alternative prior to the sale.**

(Docket Nos. 40-7 at 1, 21; 45 at 52, 72) (emphasis in original).

On July 17, 2017, MTGLQ mailed Plaintiff notice that the Property was scheduled for a foreclosure sale on August 14, 2017.  (Docket Nos. 40-8, 45 at 78–83).  MTGLQ also published notice in the Sentinel and Enterprise on July 24, July 31, and August 7.  On August 14, 2017, MTGLQ purchased the Property via foreclosure deed for $133,000.00.

Plaintiff tried to mail a loan modification application to Rushmore on August 1, 2017, but it was not delivered due to an invalid address. (Docket No. 40-9 at 1).  On August 21, 2017, Plaintiff called Rushmore to obtain the correct mailing address.  (Docket No. 41-3).  During the call, a Rushmore representative informed Plaintiff that it would be pointless to apply for a loan modification because the Property had sold.  (Docket No. 41-3 at 66–67).  Plaintiff nonetheless mailed a second application, which Rushmore allegedly received on August 24, 2017.

When Rushmore did not modify his loan in accordance with the offer in the June Letter, Plaintiff filed a complaint in state court on October 3, 2017.  Defendants removed the case to this Court on November 3, 2017 (Docket No. 1), and the parties filed cross-motions for summary judgment on September 23, 2019 (Docket Nos. 37 & 42).

### Legal Standard

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it may affect the outcome of the suit. *Id.*

When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

### Discussion

*1. FDCPA Claim*

To establish a claim under the FDCPA, a plaintiff must show "(1) that she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA." *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 30 (D. Mass. 2014) (quoting *Som v. Daniels Law Offices, P.C.*, 573 F.Supp.2d 349, 356 (D. Mass. 2008)).

The parties disagree over whether Rushmore qualifies as debt collector. Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Rushmore, a business specializing in mortgage servicing, undoubtedly meets these criteria. Yet, Rushmore contends that, because its actions relate to enforcement of its security interest in the Property rather than collection of the debt, it is excluded from the scope of "debt collector" under the Supreme Court's recent decision in *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019). Rushmore misconstrues the import of *Obduskey*. *Obduskey* holds that "those who engage in *only* nonjudicial foreclosure

4

proceedings," e.g., a law firm managing the foreclosure process for a mortgage servicer, "are not debt collectors within the meaning of the Act." *Id.* at 1038 (emphasis added). Rushmore, however, did not "only" participate in the nonjudicial foreclosure proceedings; it also serviced Plaintiff's mortgage. Rushmore therefore does not fall within the scope of *Obduskey*.

The parties also disagree on whether Defendants engaged in an act prohibited by the FDCPA. Plaintiff asserts that the June Letter contained a "false, deceptive, or misleading representation . . . in connection with the collection of any debt." *See* § 1692e. "Under the FDCPA, a representation from a debt collector is deceptive 'when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Waters v. Kream*, 770 F. Supp. 2d 434, 436 (D. Mass. 2011) (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)). When analyzing an FDCPA claim, courts view representations "from the perspective of the hypothetical unsophisticated consumer." *Pollard v. Law Office of Many L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014). This is an objective standard that "protects 'all consumers, including the inexperienced, the untrained and the credulous.'" *Id.* (quoting *Taylor v. Perrin, Landy, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) (citations omitted)). But it retains "an element of reasonableness." *Id.* at 104. A defendant will not be liable if the consumer's interpretation of a representation is "chimerical or farfetched." *Id.*

Applying this standard, the Court determines that the June Letter was deceptive under the FDCPA. The June Letter provides that, "in the event we have not heard from you within 60 days from the date of this offer, you still may be eligible for this program; however a new valuation will be required." (Docket No. 40-7 at 1). An unsophisticated consumer could reasonably interpret this statement to imply that, if he provides documentation that he meets the eligibility requirements within 60 days, he *will* receive modification terms, i.e., that the June Letter

5

contains an offer giving Plaintiff 60 days to accept.  (Docket No. 17 at 4–5).  Defendants contend

that this offer was not misleading, deceptive, or false because the 60-day window began on May

16, 2017, when the valuation occurred, and expired before MTGLQ sent notice of the

foreclosure sale.  The June Letter, however, fails to specify that May 16 is the date of the offer.

It merely states that "[t]his modification program is *based upon* a valuation dated 05/16/2017."

(Docket No. 40-7 at 1) (emphasis added).  Given that the letter itself was sent on June 27, 2017,

an unsophisticated consumer could reasonably believe the "date of this offer" is June 27.  *See*

*Waters*, 770 F. Supp. 2d at 437 ("Under the generally approved standard, a 'least sophisticated

consumer' is not obliged to closely parse the words of a communication in order to divine its

meaning. . . . The substance of the communication, read as a whole, matters more than its

linguistic construction.").  Thus, the June Letter is deceptive under the FDCPA.  *See id.* at 436.

  A genuine dispute of material fact exists, however, as to whether the June Letter was sent

"in connection with the collection of any debt."  *See* § 1692e; *see also Ruth v. Triumph*

*Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009) (noting that "whether a communication was sent

'in connection with' an attempt to collect a debt is a question of objective fact").  In

"determining whether a communication is 'in connection with the collection of any debt,'

[courts] look to the language of the communication in question—specifically to statements that

demand payment and discuss additional fees if payment is not tendered."  *Farquharson v.*

*Citibank, N.A.*, 664 F. App'x 793, 801 (11th Cir. 2016); *see also Lucas v. New Penn Fin.*, LLC,

No. 17-CV-11472-ADB, 2019 WL 404033, at *5 (D. Mass. Jan. 31, 2019) ("Communications

that address a borrower's loss mitigation application and do not demand payment may, under

some circumstances, not be connected to the collection of a debt.").  "[T]he purpose and context

of the communications—viewed objectively—are important factors as well." *Gburek v. Litton*

*Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010).

Here, the language and context of the June Letter are ambiguous. On the one hand, the

June Letter does not demand payment or reference any other document that demands payment.[1]

It merely offers a modification plan, and many courts have found that an offer for a loan

modification, standing alone, is not collection activity. *See Muathe v. Wells Fargo Bank, N.A.*,

No. 18-2064-CM-TJJ, 2019 WL 635407, at *5 (D. Kan. Feb. 14, 2019) (holding "that

communications regarding loan modification or loss mitigation are not related to debt collection

and therefore do not fall under the protections of the FDCPA"); *see also Marshall v. Deutsche*

*Bank Nat'l Tr. Co.*, No. 4:10CV00754-BRW, 2011 WL 345988, at *3 (E.D. Ark. Feb. 1, 2011)

(finding that "letters regarding loan modification were attempts to restructure the debt instrument

and lower the payments, not a demand for payment," and therefore could not establish a

violation of the FDCPA), *aff'd*, 445 F. App'x 900 (8th Cir. 2011). Nothing, moreover, compels

Plaintiff to act on the offer in the June Letter. It is not tied to any ongoing discussion regarding

Plaintiff's financial situation, and although it provides favorable terms, Plaintiff could ignore the

June Letter and "the loan would stay exactly as it were . . . ." *See Farquharson*, 664 F. App'x at

801.

On the other hand, the letter references Plaintiff's "current mortgage situation," i.e., his

default, and a notice at the end of the attached application states that Rushmore "is attempting to

---

[1]      Plaintiff contends that the June Letter was "plainly sent in connection with the collection of a debt" even though it "did not seek to collect an immediate payment" because Rushmore only offered the modification for the purposes of collecting future payments. (Docket No. 38 at 13). But the logic behind this premise risks sweeping every loan communication under the umbrella of "in connection with debt collection." Every loan communication, even a statement, is ultimately made in the hopes of collecting future payments on debt.

collect a debt."  Docket No. 40-7 at 2, 25; *see also Farquharson*, 664 F. App'x at 802

(emphasizing that the communication "did not state that Bank of America was trying to collect a

debt" despite identifying Bank of America as a debt collector).  This information suggests that

the "animating purpose" of the letter is "to induce payment by the debtor."  *See Grden v. Leikin*

*Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011).  The letter also mentions "other

alternatives" to modification, e.g., "short sale" or "deed in lieu of foreclosure."   In *Gburek*, the

Seventh Circuit found that a similar communication referencing the debtor's default and

"foreclosure alternatives" was an "opening communication in an attempt to collect Gburek's

defaulted home loan—by settlement or otherwise."  614 F.3d at 386.

Given this record, reasonable jurists could disagree as to whether Rushmore's offer was

made in connection with the collection of debt.  The Court therefore ***denies*** the parties' cross-

motions for summary judgment.

### 2.  MCPA Claim

Section 2(a) of Chapter 93 of the Massachusetts General Laws makes unlawful "[u]nfair

methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce."  "Conduct is 'deceptive' when it has 'the capacity to mislead consumers, acting

reasonably under the circumstances, to act differently from the way they otherwise would have

acted.'"  *Okoye v. Bank of New York Mellon*, No. CIV.A. 10-11563-DPW, 2011 WL 3269686, at

*6 (D. Mass. July 28, 2011) (quoting *Aspinall v. Philip Morris Cos*., 442 Mass. 381, 396 (Mass.

2004)).  An intent to deceive is not required.  *Maillet v. ATF-Davidson Co*., 407 Mass. 185, 193

(1990).

The Court determined above that the June Letter has the capacity to mislead a

hypothetical unsophisticated consumer.  The Court, however, declines to find it deceptive as a

matter of law under the MCPA. Reasonable jurists could disagree about whether the June Letter would have led a reasonable consumer to act differently, i.e., whether it could reasonably lead a consumer to abstain from challenging a foreclosure sale that he otherwise would have disputed during the 60-day offer period. The Court therefore ***denies*** the parties' motions for summary judgment. *See Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563 (2008) (noting that "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact," although "the boundaries of what may qualify for consideration as a c. 93A violation is a question of law" (quoting *Schwanbeck v. Federal–Mogul Corp.*, 31 Mass. App. Ct. 390, 414 (1991)).

*3. Damages*

Defendants contend that Plaintiff's MCPA claim fails because he has not established entitlement to economic damages. The Court disagrees. Plaintiff seeks damages associated with the foreclosure of his home, and reasonable jurists could disagree as to whether the foreclosure occurred because of the deception[2] or because Plaintiff failed to act on the July 17, 2017, notice of foreclosure. The Court thus ***denies*** Defendants' motion for summary judgment on damages.

**Conclusion**

For the reasons stated above, the Court ***denies*** Defendants' motion for summary judgment (Docket No. 42) and ***denies*** Plaintiff's motion for summary judgment (Docket No. 37).

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[2]     Plaintiff contends that he could have filed for bankruptcy to prevent foreclosure if he had known the offer did not remain open through the scheduled foreclosure sale.